```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  KEITH J. LANE,                                            :
                                                            :
                         Plaintiff,                         :   MEMORANDUM DECISION
                                                            :   AND ORDER
  - against -                                               :
                                                            :   24-cv-3774 (BMC)
                                                            :
  MELANIE WHINNERY, BRYAN BERGE,                            :
  BRAD LANDER, JUMAANE WILLIAMS,                            :
  MARK LEVINE, ANTONIO REYNOSO,                             :
  VANESSA GIBSON, DONOVAN                                   :
  RIRCHARDS JR., VITO FOSSELLA,                             :
  HENRY GARRIDO, RICHARD DAVIS,                             :
  GREGORY FLOYD, THE BOARD OF                               :
  TRUSTEES OF THE NEW YORK CITY                             :
  EMPLOYEES' RETIREMENT SYSTEM,                             :
  THE NEW YORK CITY EMPLOYEES'                              :
  RETIREMENT SYSTEM, and THE CITY                           :
  OF NEW YORK,                                              :
                                                            :
                         Defendants.                        :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This is a 42 U.S.C. § 1983 and breach of contract case against defendants City of New York, the New York City Employees' Retirement System ("NYCERS"), the Board of Trustees of NYCERS, and individual members and employees of NYCERS and the Board of Trustees (collectively, defendants). Plaintiff alleges the taking of his property in the form of retirement benefits and payments without due process of law in violation of his Fourteenth Amendment rights and in breach of defendants' contractual obligations under New York common law and Article 5 § 7 of the New York State Constitution.

Before me is defendants' motion to dismiss or abstain pursuant to Federal Rule of Civil Procedure 12(b)(1) under the Younger or Colorado River abstention doctrines. For the reasons below, the Court grants defendants' motion to dismiss pursuant to the Colorado River doctrine.

## BACKGROUND

I.      **Summary of Amended Complaint**

Plaintiff Keith J. Lane became a member of NYCERS in June 1988. "NYCERS is the public employee retirement system responsible for administering the retirement programs for employees of the City and various City-related participating employers," Kaslow v. City of New York, 23 N.Y.3d 78, 83, 989 N.Y.S.2d 431 (2014), and includes reviewing applications for accidental disability retirement provided by § 13-168 of the New York Administrative Code and § 605 of the New York Retirement and Social Security Law ("RSSL"). "In general, a member's retirement benefits vary by tier and plan, which are determined by date of membership and job title, respectively." Id. at 84.

By virtue of his employment with the New York State Department of Transportation ("DOT") – and other positions within the City beginning in 1988 – plaintiff was a Basic Tier 4 member of NYCERS as a part of the 62/5 Career Pension Plan, within the meaning of Administrative Code § 13-162.[1] In 2020, plaintiff suffered an injury while working for DOT. Due to the severity of his injuries, plaintiff applied for accidental disability retirement to NYCERS pursuant to RSSL § 605. Plaintiff later submitted a follow-up request to NYCERS for information about his entitlement to retirement awards pursuant to Administrative Code § 13-175, which provides disability retirement for Tier 1 and 2 members of NYCERS.[2] Additionally, plaintiff inquired about his entitlement to retire before the normal retirement age of 62 without

---

[1] People who joined NYCERS between July 27, 1976 and March 31, 2012 were placed into Tier 4 membership, with the exception of correction officers and district attorney investigators.

[2] Tier 1 membership in NYCERS is generally considered better than Tier 4 due to the lower retirement age. See McKinney's Restatement and Social Security Law § 652 (the normal retirement age for Tier 1 members is 55, whereas for Tier 4 members it is 62). Additionally, Tier 4 members are required to contribute 3% of their annual wages to their pensions but Tier 1 members are not. See Lynch v. City of New York, 23 N.Y.3d 757, 992 N.Y.S.2d 726 (2014).

2

imposition of a "tier-equity" penalty, which otherwise applies to members in his tier who have not completed at least 30 years of credited service.

The NYCERS Medical Unit approved plaintiff's application for accidental disability retirement and set his official retirement date. Plaintiff received a letter from NYCERS explaining that he was not entitled to disability retirement benefits provided by Administrative Code § 13-175, as a disability under that section is reserved for Tier 1 and 2 members only. NYCERS also denied plaintiff's request to retire before 62 without imposition of a penalty.

Tier 4 members were required to make Basic Member Contributions ("BMC") to NYCERS' Member Contribution Accumulation Fund ("MCAF") totaling 3% of their gross wages, including overtime, between July 1, 1988 and October 1, 2000. After BMCs were deposited into a members' MCAF, interest accrued at the rate of 5% compounded annually. Any amount less than the required amount in a retiree's MCAF was considered a deficit. Under RSSL § 613, NYCERS recovered any deficiencies with interest, and NYCERS imposed a payroll deduction to resolve the deficiency. Plaintiff was required to contribute his BMCs according to this scheme after becoming a Tier 4 member in 1988. Despite this requirement, plaintiff missed many of his BMC payments between 1988 and 2000.

In 2012, NYCERS informed plaintiff that he owed $64,803.30 and enrolled him in a repayment plan consisting of 390 payments of $166.17. Plaintiff paid. Despite completing these payments, NYCERS informed plaintiff in 2021 that he had 192 remaining installments with the option to make a lump sum payment of $23,518.90.

The parties disagree as to the accuracy of NYCERS' underlying calculations in collecting plaintiff's BMCs following a readjustment of plaintiff's repayment plan in 2022, from his original repayment plan in 2012, to include unpaid BMCs and statutory interest. Plaintiff alleges

that NYCERS' "failure to conduct an internal administrative review of his account" resulted in "inconsistent" and "contradictory" calculations of unpaid BMCs for which he was not liable after complying with NYCERS' first certified repayment plan in 2012. Plaintiff does not dispute, however, that he failed to make required BMCs for several years prior to 2000.

After officially retiring in 2022, plaintiff received advance monthly payments from NYCERS. To maintain his full monthly payments, in 2023, NYCERS required plaintiff to repay $21,692.94 in owed contributions. Plaintiff paid the amount in full.

Following his payment of the remaining BMCs in February 2023, plaintiff continued to receive his monthly advance payments from NYCERS until April 2024. At that time, NYCERS suspended the monthly payments because plaintiff failed to submit a retirement Option Election Form within 60 days of notification. Upon retirement, NYCERS issues temporary advance payments until the retiree selects a final pension option. Retirees have to choose between a maximum allowance or a benefit reduction option to provide continuing benefits to a designated beneficiary after the retiree's death. If no election is made within 60 days, NYCERS defaults to the previously elected temporary option or, where no temporary option was chosen, the maximum allowance.

On May 26, 2023, NYCERS sent a letter requiring plaintiff to "file a permanent Option election within 60 days so [his] retirement [could] be finalized." Plaintiff did not submit a permanent option election form within 60 days. NYCERS then attempted to implement his previously elected temporary option: the designation of a beneficiary. However, NYCERS could not automatically revert to the retiree's pre-selected option to designate a beneficiary without the beneficiary's "vital records," which plaintiff never provided. NYCERS attempted to contact plaintiff on two separate occasions to resolve this discrepancy with no response. Plaintiff alleges

4

that he was unable to comply with NYCERS' 2023 request for an option election because of his unresolved issues concerning his entitlement to greater disability retirement benefits and the outstanding BMCs discussed above. Further, plaintiff alleges that he did not receive a letter from NYCERS confirming the suspension of his benefits.

Nevertheless, NYCERS suspended plaintiff's temporary payments, effective April 30, 2024. NYCERS submits that it will reinstate plaintiff's payments upon submission of his designated beneficiary's "vital records." Upon filing his amended complaint in this Court, plaintiff had not received any retirement benefits since NYCERS imposed the suspension.

## II.     Procedural History

On November 15, 2022, plaintiff commenced a New York Civil Practice Law and Rules ("CPLR") Article 78 proceeding in state court. <u>Keith J. Lane v. Whinnery</u>, 533459/2022 (N.Y. Sup. Ct. Kings Cnty.) (the "2022 Article 78 proceeding"). In that petition, plaintiff sought judicial review of defendants' final determination as described in NYCERS' 2022 letter advising plaintiff that he was not entitled to disability retirement benefit provided by Administrative § 13-175. Additionally, plaintiff requested the annulment and reversal of defendants' retroactive imposition of BMC payments and rejection of his entitlement to retire before 62 without imposition of a penalty. In his second amended verified petition, plaintiff challenged as arbitrary and capricious the aforementioned actions, including defendants' addition of compounded interest to his outstanding BMC deficit. Plaintiff also raised an additional objection to NYCERS' determination requiring him to pay the lump sum of $21,692.94 to continue receiving his retirement benefits without reduction.

On November 21, 2024, the state court issued a final judgment on plaintiff's claims. Applying a deferential standard of review, the court found that defendants' actions were neither

5

arbitrary nor capricious. Decision and Order, Lane v. Whinnery, No. 533459/2022 (N.Y. Sup. Ct. Kings Cnty. Nov. 21, 2024), NYSCEF Doc. No. 117 at 13. Plaintiff timely appealed, and the appeal remains pending.

Plaintiff filed this action in May 2024, alleging violations of his Fourteenth Amendment substantive and procedural due process rights and breach of contract under New York common law and Article 5 § 7 of the New York State Constitution. Plaintiff challenges defendants' (1) suspension of his retirement benefits, (2) refusal to provide him with benefits reserved for Tier 1 and 2 NYCERS members, (3) demand for a lump-sum payment of $21,692.94 in outstanding BMCs to avoid a reduction in his monthly payments, (4) alleged errors in calculating his outstanding BMCs, (5) retroactive imposition of payroll deductions taken from 2012 to 2022 to account for the deficit in his MCAF from unpaid contributions and statutory interest, (6) violation of plaintiff's right to substantive due process based on the above-listed actions, (7) "creation of a policy or custom fostering the unlawful conduct complained of" (Monell liability), and (8) vicarious liability for failure to properly supervise subordinate employees or adopt proper policies and procedures to avoid the alleged wrongdoings. Plaintiff does not challenge defendants' denial of his entitlement to early retirement without the imposition of a penalty.

Shortly after filing the instant federal complaint, plaintiff commenced his second Article 78 petition in state court on July 26, 2024 (the "2024 Article 78 proceeding"). Keith J. Lane v. Whinnery, 520251/2024 (N.Y. Sup. Ct. Kings Cnty.). In the 2024 Article 78 proceeding, plaintiff sought judicial review of defendants' final determination and suspension of his retirement benefits after failing to submit his option election form with the requested information about his designated beneficiary. The state court eventually dismissed this proceeding due to plaintiff's failure to appear for oral argument.

In all three cases, plaintiff sued NYCERS, the NYCERS Board of Trustees, and individual employees of NYCERS and members of the Board. Plaintiff did not sue the City of New York in either of his state court proceedings.

## DISCUSSION

### I. Legal Standard

"Courts have recognized a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions when considering a Rule 12(b)(1) motion," such as whether the subject matter is one over which the federal court should abstain from exercising jurisdiction. Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (4th ed.) (footnotes omitted). "[T]he scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses, challenging the federal court's ability to proceed with the action." Id. Thus, a court's decision to abstain may be considered as a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Cf. Woodford v. Cmty. Action Agency of Greene Cnty. Inc., 239 F.3d 517, 520 (2d Cir. 2001) (upholding the district court's view that a decision to abstain constitutes a lack of subject matter jurisdiction).

### II. Younger Abstention

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court declared that federal courts should abstain from exercising jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. "[G]iving the respect to our co-equal sovereigns that principles of 'Our Federalism' demand, we generally prohibit federal courts from intervening in such matters." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2001) (quotation omitted).

Younger abstention only applies to state cases that were already pending at the time the federal case is filed. See Gristina v. Merchan, 131 F.4th 82, 88 (2d Cir. 2025) (citing Cecos

7

Intern., Inc. v. Jorling, 895 F.2d 66, 72 (2d Cir. 1990)). Accordingly, this Court will not apply Younger abstention to plaintiff's 2024 Article 78 proceeding, which plaintiff commenced after this case. However, the Court will consider the application of Younger abstention to plaintiff's 2022 Article 78 proceeding, notwithstanding the state court's final judgment on plaintiff's 2022 petition following the commencement of the instant federal action. See id. at 89 (clarifying that the applicability of Younger abstention is determined at the time the federal action is filed, not based on subsequent developments in the state court proceedings, even if the state court proceedings later reach a final judgment during the pendency of the federal case).

"[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." Sprint Commc'ns, Inc., v. Jacobs, 571 U.S. 69, 70 (2013) (quoting New Orleans Pub. Serv., Inc. v. C. of City of New Orleans, 491 U.S. 350, 368 (1989) (internal quotation marks omitted)). These "exceptional circumstances" include three categories of pending state proceedings: (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 78 (internal quotation marks and quotations omitted). Defendants' Younger argument proceeds under the third category.[3]

The third category requires federal abstention under Younger in "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 491 U.S. at 78. Younger abstention is thus required where "the States have important interests in administering certain aspects of their judicial systems," and

---

[3] Defendants do not argue, nor could they, that abstention is proper under the first or second categories, because the 2022 Article 78 proceeding bears no resemblance to a criminal or quasi-criminal proceeding. See Sprint, 571 U.S. at 79-80.

8

that includes "enforcing the orders and judgments of their courts." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13 (1987).

"Although the Supreme Court has not comprehensively defined what it means for a pending civil proceeding to be 'uniquely in furtherance of' a state court's ability to perform its judicial function," Gristina, 131 F.4th at 89-90 (quotation omitted), the Court's decision in Sprint provides guidance. The Court in Sprint identified two types of state court orders that fall within the third category: civil contempt orders and orders requiring the posting of bonds pending appeal. Civil contempt orders and post-judgment bond requirements "are uniquely in furtherance of a state court's judicial function because they are processes by which the State compels compliance with the judgments of its courts." Id. at 90 (internal quotation marks and quotation omitted).

The Second Circuit has applied Younger abstention in situations without a contempt or bond order at issue, "when an order involves the *way* that a state court manages its proceedings in a subject-area in which the state has an especially strong interest," because such an order "is integral to the State court's ability to perform its judicial function." Id. (cleaned up). "Therefore, a challenge to this type of integral order, and not merely the enforcement of the underlying state court judgment, is 'clearly' within Younger's third category." Id. (quotation omitted); see also Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty., 805 F.3d 425, 428 (2d Cir. 2015) (Younger abstention warranted where a husband challenged the constitutionality of a New York statute requiring parents to pay for the attorneys appointed to their children in a custody dispute because "orders relating to the selection and compensation of court-appointed counsel for children are integral to the State court's ability to perform its judicial function in divorce and custody proceedings."). Accordingly, "federal courts should refrain from

9

interfering with core state civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." Cavanaugh v. Geballe, 28 F.4th 428, 434 (2d Cir. 2022).

In contrast, the 2022 Article 78 proceeding fails to "implicate[] a process [or procedural decision] that aids the state court's core ability to function or force the parties to comply with its order." Id.  The Kings County Supreme Court's decision does not involve a "'*way*' that [the] state court manages its proceedings" as an integral part of its judicial function, see Gristina, 131 F.4th at 90 (citation omitted), nor does the state court have an interest in enforcing "the orders and judgments of [its state's] courts" as necessary to satisfy the third Younger category where no order or judgment exists to enforce.  Pennzoil, 481 U.S. at 13.

A fair reading of defendants' argument is that the deferential "arbitrary and capricious" standard in an Article 78 proceeding makes a state court ruling in the defense's favor likely, thereby creating an order that triggers the State's interest in protecting judicial functions from federal interference.  This Court finds that argument unpersuasive.  Applying defendants' expansive view of the third category would misconstrue the Supreme Court's efforts to protect specific state judicial functions and enforcement orders under this narrowly applied category.

Accordingly, this Court will not apply Younger abstention to plaintiff's Article 78 proceedings.[4]

---

[4] Because the 2022 Article 78 proceeding does not fall into any of the categories for Younger abstention to apply, this Court does not reach the three additional factors enumerated in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982). Cf. Astoria Gen. Contracting Corp. v. Off. Of Comptroller of New York, 159 F. Supp. 3d 385, 396 (S.D.N.Y. 2016) (finding that if the state court case falls within one of the three enumerated Sprint categories, then the court may also consider whether to abstain in light of the factors articulated in Middlesex, or Diamond "D" factors as referred to by defendants).

**III.     Colorado River Abstention**

The Colorado River abstention doctrine is appropriate in limited situations "involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976).  The doctrine presents an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. at 813 (internal quotation marks and quotation omitted).  "Under the Colorado River doctrine, the nature of the inquiry is not whether there are reasons to exercise federal jurisdiction, but rather whether exceptional circumstances exist which justify dismissal in deference to a pending state court proceeding." All. of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988) (citation omitted).  Nevertheless, "[a]bstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent law." Colorado River, 424 U.S. at 814 (internal quotation marks and quotation omitted).

Pursuant to Colorado River abstention, "a district court may stay or dismiss a party's claims only where (1) the relevant state and federal actions are parallel and (2) an evaluation of a six-factor test weighs in favor of abstention." First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012) (internal quotation marks and quotation omitted).  The six factors are: (1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiffs' rights.  De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir. 1989).  These factors should not be applied mechanically, "but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."

11

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1993). The Court must balance these factors, considering that "[o]nly the clearest of justifications will warrant dismissal." Id. (internal quotation marks and quotations omitted).

As indicated by the fourth factor of the six-factor test, the application of Colorado River abstention is not foreclosed by a first-filed federal case. Additionally, this Court assumes that, as with Younger abstention, the issue of Colorado River abstention "is evaluated at the time of filing, and it is not continuously re-evaluated throughout the pendency of a proceeding." Gristina, 131 F.4th at 87 (citations and footnote omitted). Accordingly, the decisions rendered in both the 2022 and 2024 Article 78 proceedings, and the timing of the 2024 Article 78 proceeding, do not render Colorado River abstention inapplicable, and the Court will consider its application to both proceedings.

### A.    Parallel Proceedings

A court must begin its Colorado River abstention analysis with "a threshold determination that the concurrent proceedings are parallel." Mochary v. Bergstein, 42 F.4th 80, 85 (2d Cir. 2022) (internal quotation marks and quotation omitted). Applying the principles below, this Court finds that the instant action and plaintiff's Article 78 proceedings are parallel.

"Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997) (citations omitted); see also Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006) (affirming that the parties in the federal and state proceedings must be at least "substantially the same, litigating substantially the same issues in both actions." (citations omitted)). "Complete identity of parties and claims are not required. . . . However, resolution of the state action must dispose of all claims presented in the

federal case." DDR Constr. Servs., Inc. v. Siemens Indus., 770 F. Supp. 2d 627, 644 (S.D.N.Y. 2011) (internal quotation marks and quotations omitted).  The Court finds persuasive that other courts within this Circuit have declined to exercise jurisdiction pursuant to Colorado River where, as here, the federal § 1983 claims implicate "the same core allegations" present in plaintiff's pending Article 78 proceedings.  See Ferolito v. Menashi, 918 F. Supp. 2d 136, 142 (E.D.N.Y. 2013).

In Manna v. Greenburgh No. 11 School District., 2 F. Supp. 2d 461 (S.D.N.Y. 1998), the district court considered plaintiff's § 1983 claims seeking injunctive and compensatory relief, alleging that defendant school district violated plaintiff's First Amendment rights when defendant retaliated against him for engaging in protest activity against the school board's policies on school grounds.  The federal action followed a series of lawsuits in state and federal court, including several Article 78 proceedings in state court to challenge defendant's conduct.  Following its decision to withhold a declaratory judgment regarding the school district's policy, the Manna court considered whether to abstain under Colorado River on plaintiffs § 1983 claims for injunctive and compensatory relief.  In so doing, the court found that "[t]he instant action and the numerous state proceedings are indeed parallel. . . .  In the first place, the issues in the instant action and the pending . . . Article 78 proceedings are essentially the same: the propriety and constitutionality of the [various] disciplinary charges and the defendants' attendant conduct." Id. at 468.  See also Iacovacci v. Brevent Holdings, LLC, 437 F. Supp. 3d 367, 376 (S.D.N.Y. 2020) ("Courts have found parallelism where claims in concurrent state and federal proceedings contain similar factual overlap."); Stahl York Ave. Co., LLC v. City of New York, No. 14-cv-7665, 2015 WL 2445071, at *9 (S.D.N.Y. May 21, 2015), aff'd, 641 F. App'x 68 (2d Cir. 2016)

(Article 78 petition challenging landmark designation as unconstitutional taking was parallel to § 1983 lawsuit asserting a violation of his substantive due process rights).

As in Manna, 2 F. Supp. 2d at 461, here, plaintiff's Article 78 petitions and § 1983 claims are "essentially the same." Although plaintiff pursues different legal theories in the instant federal action than in the Article 78 proceedings – namely, whether defendants actions were arbitrary and capricious – the state cases involve "in [their] essential elements the same cause[s] of action, regardless of theory or pleadings," and "[m]erely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." Telesco v. Telesco Fuel and Masons' Materials, Inc., 765 F.2d 356, 362 (2d Cir. 1985).

Further, plaintiff's state and federal claims are not independent. The underlying facts alleged in both proceedings are the same. Plaintiff's Article 78 proceedings hinged on whether defendants' actions – stripping plaintiff of his pension payments, denying his request for Tier 1 and 2 benefits status, and imposing BMC payments with interest – were arbitrary and capricious. Here, the pertinent facts will mirror those at issue in the prior Article 78 proceedings, notwithstanding the different constitutional legal theories plaintiff now advances under § 1983. As a result, the state actions arise out of "the same core allegations" as the present federal action, Ferolito, 918 F. Supp. 2d at 142. In other words, plaintiff's "primary goal" in the state and federal courts cases is identical: the return his unreduced retirement pension and benefits. Stahl York Ave. Co., LLC v. City of New York, No. 14-cv-7665, 2015 WL 2445071, at *9 (S.D.N.Y. May 21, 2015), aff'd, 641 F. App'x 68 (2d Cir. 2016).

14

Article 78 proceedings are "a method for challenging state administrative action." Davis v. Halpern, 813 F.2d 37, 38 n.1 (2d Cir. 1987) (citation omitted). The Court recognizes that Article 78 proceedings are distinct from plenary civil actions because they offer limited relief. CPLR § 7806 provides that "[a]ny restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action." Specifically, Article 78 courts are typically "unable to award monetary damages." Karamoko v. New York City Hous. Auth., 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001) (citation omitted). Substantial New York authority indicates that damages for civil rights violations are not included as incidental damages in an Article 78. Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986) (collecting cases).

Even so, courts in the Second Circuit have found cases to be parallel despite differences in the relief sought. See, e.g., Highview Props. D.H.F. Inc. v. Town of Monroe, 606 F. Supp. 3d 5, 30 (S.D.N.Y. 2022) (declining plaintiff's argument that the state Article 78 proceeding and the federal action were not sufficiently parallel for the court to abstain under Colorado River, "because they involve different rights and remedies" on the ground that "Colorado River does not require that the federal and state suits be identical in every aspect; instead, all that is needed is that 'substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" (quoting Dittmer v. Cnty of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)). The Court may overlook the asymmetrical remedies afforded to plaintiff, where, as here, the causes of action in the state and federal proceedings are comprised of the same "core allegations," Ferolito, 918 F. Supp. 2d at 142,[5] and the same parties are litigating in a different

---

[5] Under CPLR § 7806, plaintiff's request for the repayment of $21,692.94 in the instant action is incidental to his claim that defendant's demand for that payment was arbitrary and capricious in the 2022 Article 78 proceeding, because the "monetary obligation would arise automatically as a result of the [state] court's decision on the primary claim." Antonsen v. Ward, 943 F.2d 198, 203 (2d Cir. 1991).

15

forum. Dittmer, 146 F.3d 113. The federal and state court actions, therefore, meet Colorado River's parallel proceeding threshold requirement.

  **B.**  **Six-Factor Test**

In applying the Colorado River factors, this Court is guided by the Second Circuit's instructions that "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it," Woodford v. Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 522 (2d Cir. 2001), and that the balance of factors weighs heavily in favor of exercising jurisdiction. Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir. 1996) (citation omitted).

This action does not involve a *res* and the federal and state courts are equally convenient for the parties, so the first two factors of the analysis are neutral and counsel against abstention. Woodford, 239 F.3d at 522; see also Village of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999) ("where the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." (internal quotation marks and quotation omitted)).

The fourth Colorado River factor weighs in favor of abstention as to both Article 78 proceedings. "The fourth factor looks at the chronological order in which the actions were filed." De Cisneros, 871 F.2d at 308. However, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21; see also Bethlehem Contracting Co. v. Lehrher/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986). Here, plaintiff has received final judgments in both of his Article 78 proceedings, indicating that the state proceeding has advanced further than this federal action.

On the fifth factor, defendants concede that the applicable substantive law in the case is federal. "[W]hen the applicable substantive law is federal, abstention is disfavored." Village of Westfield, 170 F.3d at 124 (internal quotation marks and quotation omitted). And there is no

"novel state theory" warranting exclusive state oversight in either the 2022 or 2024 proceedings. See Telesco, 765 F.2d at 363 (dismissing the federal action in favor of the concurrent state proceeding because state law provided the rule of decision on a novel state law theory raised by the plaintiff); see also Frydman v. Verschleiser, 172 F. Supp. 3d 653, 666 (S.D.N.Y. 2016) (finding that "even the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." (internal quotation marks and quotation omitted)).

The sixth factor – "whether the state procedures are adequate to protect the plaintiff's federal right's" – slightly favors federal abstention. See De Cisneros, 871 F.2d at 307. Importantly, "[t]he possibility that the state court proceeding might adequately protect the interest of the parties is not enough to justify the district court's deference to the state action. This factor . . . is more important when it weighs in favor of federal jurisdiction." Bethlehem Contracting, 800 F.2d at 328.

Here, the state courts can protect the scope of plaintiff's interests. New York law permits a party in an Article 78 proceeding to "raise a claim that the administrative application of a rule to him is unconstitutional." Hachamovitch v. DeBuono, 159 F.3d 687, 695 (2d Cir. 1998); see also Turco v. Monroe Cnty. Bar Ass'n, 554 F.2d 515, 521 (2d Cir. 1977) (New York state courts' procedures can adequately protect a party's federal constitutional rights). Plaintiff did not raise constitutional claims in his pending Article 78 proceedings, but the state court's procedures would have the capacity to protect his federal rights. This factor weighs in favor of abstention, but the sixth factor "is not enough to justify [this Court's] deference to the state action." Bethlehem Contracting, 800 F.2d at 328.

17

Collectively, these five factors do not weigh heavily in favor of abstention, nor do they present the kind of "exceptional circumstances" that would encourage this Court to shirk the "virtually unflagging obligation" to exercise jurisdiction. See Colorado River, 424 U.S. at 813, 817. It is the risk of piecemeal litigation – the third factor – that persuades the Court to abstain from retaining jurisdiction.

The Court finds that "staying or dismissing the federal action will avoid piecemeal litigation." Woodford, 239 F.3d at 522. The third factor is "[b]y far the most important," because "[a]voiding piecemeal litigation is a paramount consideration when a failure to abstain may result in inconsistent dispositions that would breed additional litigation on assertions of claim and issue preclusion." TD Bank, N.A. v. 202-4 W. 23d St. Corp., No.24-cv-930, 2024 WL 5168360, at *4 (S.D.N.Y. Dec. 19, 2024) (internal quotation marks and quotation omitted). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Nationwide Gen. Ins. Co. v. Rael Maint. Corp., No. 1:23-cv-4433, 2024 WL 1805544, at *6 (S.D.N.Y. Apr. 24, 2024).

As discussed, this action and the state court actions are "near-mirror images of each other," Lawrence Moskowitz CLU. Ltd. v. ALP, Inc., No. 19-cv-3868, 2020 WL 1503558, at *7 (S.D.N.Y. March 30, 2020), aff'd, 830 F. App'x 50 (2d Cir. 2020), where the federal action largely focuses on recovering the very same unreduced pension and benefits that plaintiff requests in his state court actions. Thus, failure to abstain may result in "inconsistent disposition[s]" and "breed additional litigation on assertions of claim and issue preclusion." See Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F. 2d 205, 211 (2d Cir. 1985). For example, a finding by this Court that defendants' actions violated the Fourteenth Amendment could conflict with the state court's dispositions that those same actions were not arbitrary and

18

capricious, creating the kind of inconsistency that raises preclusion concerns. Given this risk of piecemeal litigation and inconsistent dispositions, this Court finds that exceptional circumstances justify abstention under the Colorado River doctrine.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted pursuant to the Colorado River doctrine.[6]

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
        August 18, 2025

---

[6] The Court grants defendants' motion to dismiss instead of imposing a stay because "the Supreme Court has rejected any distinction between a stay of federal litigation and an outright dismissal for purposes of Colorado River abstention." First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 195 (E.D.N.Y. 2012) (citing Moses H. Cone, 460 U.S. at 27-28; Burnett v. Physician's Online, Inc., 99 F.3d 72, 77 (2d Cir. 1996)).